FILED

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

2014 APR 15  A 11: 54

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

MARS, INCORPORATED,
6885 Elm Street
McLean, Virginia 22101

       Plaintiff,

v.

THE HERSHEY COMPANY,
100 Crystal A Drive
Hershey, Pennsylvania 17033

and

HERSHEY CHOCOLATE &
CONFECTIONARY CORPORATION,
4860 Robb Street, Suite 204
Wheat Ridge, Colorado 80033,

       Defendants.

Civil Action No. _1:14cv399_
_LO6/TCB_

## COMPLAINT

Plaintiff Mars, Incorporated ("Mars") files this Complaint against Defendants The

Hershey Company and Hershey Chocolate & Confectionary Corporation (collectively,

"Hershey").

### INTRODUCTION

1.     Over 75 years ago, Mars created a chocolate-covered, malt ball candy and

branded it with the name MALTESERS. In the decades that followed, Mars launched

MALTESERS candy throughout much of the world. Because of the superior quality of the

product and the tireless efforts of Mars to advertise and promote the mark as well as the

distinctive all-red packaging in which the product is sold, MALTESERS candy became among

the most popular and well-recognized candies in the world. Today, Mars' MALTESERS candy in its distinctive all-red packaging is sold in many dozens of countries, and Mars earns hundreds of millions of dollars annually from those sales. Consumers in the United States associate MALTESERS and the distinctive all-red packaging in which the product is sold exclusively with Mars.

2. Hershey is engaged in a scheme to hinder Mars from selling its world-famous MALTESERS candy in the United States. In the late 1990's, Hershey purported to buy the U.S. rights to the trademark MALTESER from a third party (which itself had improperly registered it) in order to block Mars from selling MALTESERS candy in competition with Hershey's WHOPPERS candy, also a chocolate-covered malt ball, in the United States. Since then, Hershey has made no use or only bad faith, token use of the MALTESER mark merely to reserve rights in the name and has pursued a campaign of deception in the United States Patent and Trademark Office ("USPTO") which caused the USPTO to allow Hershey to maintain its MALTESER registrations, despite the fact that Hershey had no bona fide use of the mark in commerce.

3. Unlike its other brands, Hershey has not advertised or promoted its MALTESER product or even referenced the product in corporate reports or filings with the Securities & Exchange Commission. Unlike its other brands, Hershey did not actually develop a unique product under the MALTESER mark. Instead, Hershey sporadically passes off WHOPPERS candy as MALTESER candy – selling WHOPPERS under the MALTESER mark, without disclosing the switch to consumers – merely to reserve rights to the MALTESER name. Unlike its other brands, Hershey did not actually design its own packaging for MALTESER candy. Instead, Hershey simply helped itself to Mars' well-known MALTESERS packaging, copying

the distinctive, all-red color scheme of the Mars' packaging and duplicating its protected elements.

4.     By its recent copying, Hershey has tricked consumers in the United States into buying fake MALTESER candy instead of real Mars' MALTESERS candy. Upon tasting the Hershey product and realizing that he or she had been duped, one consumer put it this way: "One taste and I could not believe what I purchased! . . . These are not Maltesers by Mars – they are MALTESER by Hershey (no "S") -- they copied the style of lettering and the design of the Mars Maltesers. . . . These are a cheap knockoff by Hershey that wasn't very cheap!" Hershey's conduct is irreparably injuring Mars and hampering Mars' ability to sell MALTESERS candy in the United States.

## PARTIES

5.     Mars is a Delaware corporation with its principal place of business in McLean, Virginia. Mars is a leading, international manufacturer of chocolate candy, including milk chocolate-covered honeycomb balls known in the United States and throughout the world as MALTESERS.

6.     Defendant The Hershey Company is a Delaware corporation with its principal place of business in Hershey, Pennsylvania. Defendant The Hershey Company has made token, bad faith distributions of Hershey's MALTESER candy, including in the knock-off, all-red packaging, merely to reserve a right in a mark.

7.     Defendant Hershey Chocolate & Confectionary Corporation ("HC&CC") is a Delaware corporation with its principal place of business in Wheat Ridge, Colorado. Defendant HC&CC is the record owner of three trademark registrations in the USPTO for MALTESER and, on information and belief, manufactured or caused the manufacture of the knock-off, all-red

packaging which forms part of the basis for this Complaint.

## JURISDICTION AND VENUE

8. Mars' claims arise under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.* and the laws of Virginia, California, and New York. The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, and 1367, and 15 U.S.C. § 1121. The Court has supplemental jurisdiction over the claims arising under the laws of Virginia, California, and New York under 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they are part of the same case or controversy and derive from a common nucleus of operative facts.

9. The Court has personal jurisdiction over Hershey. Hershey has advertised, promoted, sold and shipped its products into Virginia and this judicial district, including token, bad faith sales of MALTESER candy in the knock-off, all-red packaging and Defendant HC&CC has committed fraud on the USPTO, which is located in this judicial district, with regard to its MALTESER registrations.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district and Mars has suffered harm in this district. Venue is proper in the Alexandria Division of the Eastern District of Virginia under Local Civil Rule 3(C) because a substantial part of the events giving rise to the claims alleged herein occurred in the counties or cities comprising the Alexandria Division.

## FACTUAL BACKGROUND

### I.    Mars and Its Well-Known MALTESERS Candy and Distinctive, All-Red Packaging

11. Founded over 100 years ago, Mars is a leading chocolate manufacturer in the United States and the world, with annual sales in the billions of dollars.

- 4 -

12.     Mars sells chocolate candy in the United States and throughout the world under universally recognized brands such as Snickers® M&Ms®, Milky Way®, Twix® and 3 Musketeers®.

13.     In 1936, Mars began selling MALTESERS candy in the United Kingdom where it rapidly achieved fame.

14.     Over the decades, Mars launched MALTESERS candy throughout much of the world. Today, Mars' MALTESERS candy is advertised and sold in many dozens of countries, including in the United States.

15.     In or around 1978, Mars adopted a distinctive, all-red packaging for MALTESERS candy, featuring the mark MALTESERS in a stylized font, slanted upward from left to right, and floating pieces of the candy cast in a light, as follows:



16.     Since at least as early as 1995, Mars has advertised and sold its MALTESERS candy in its distinctive, all-red packaging, which features the MALTESERS mark prominently centered and occupying almost the entire length of the packaging, in stylized font, slanted upward from left to right, and floating pieces of the candy cast in a light with a shadow underneath them, including a cross-section of a piece of the candy appearing immediately underneath the MALTESERS mark, as follows:



17.     Over the decades, Mars has invested hundreds of millions of dollars advertising and promoting MALTESERS candy throughout the world, including in the United States.  Mars prominently features its distinctive all-red packaging in advertising for the brand.  Over the decades, Mars has earned billions of dollars in revenues from the sale of MALTESERS candy in the distinctive, all-red packaging to consumers throughout the world, including from sales in the United States.

18.     In 1995, Mars registered the domain **maltesers.com**, and several years thereafter began to advertise and promote its MALTESERS candy and the distinctive, all-red packaging to consumers in the United States and throughout the world from that website.  For over a decade, Mars also has advertised and promoted MALTESERS candy and the distinctive, all-red packaging to consumers in the United States and throughout the world at its website **mars.com**.

19.     For nearly two decades, retailers throughout the United States, including in Virginia, New York and California, have sold Mars' MALTESERS candy in the distinctive, all-red packaging.  Mars' MALTESERS candy in its distinctive all-red packaging is purchased and is available for purchase by consumers located in the United States at **amazon.com**, **worldmarket.com**, and **walmart.com**, among other internet websites, and in numerous grocery stores across the United States.  Mars also sells its MALTESERS candy in duty-free shops in airports in the United States.  Mars maintains a Facebook page for the MALTESERS candy that is available to consumers in the United States and has more than 1.6 million "likes" from fans

throughout the world, including in the United States.

20.     Substantial numbers of consumers from throughout the United States have purchased Mars' MALTESERS candy in its distinctive, all-red packaging and have been exposed to advertising and promotion for Mars' MALTESERS candy in its distinctive, all-red packaging.

21.     Over the decades, substantial numbers of consumers in the United States have purchased Mars' MALTESERS candy in its distinctive all-red packaging while visiting countries outside of the United States.

22.     Mars' MALTESERS candy has been referred to in tens of thousands of news articles and general interest stories appearing in mainstream publications distributed throughout the world, including in publications that are widely circulated in the United States.

23.     Mars' MALTESERS mark and its all-red packaging featuring various elements are unique and unusual in the U.S. marketplace.  The MALTESERS mark and its packaging are the subject of numerous trademark registrations in over 130 countries.

24.     Consumers in the United States associate Mars' MALTESERS mark and distinctive, all-red packaging featuring various elements exclusively with goods sold by Mars, and have done so for nearly two decades.  Mars' MALTESERS mark and distinctive, all-red packaging featuring various elements have achieved secondary meaning in the United States as designating goods sold exclusively by Mars and have done so for nearly two decades.

25.     On information and belief, Mars' MALTESERS mark and distinctive, all-red packaging featuring various elements are well-known among consumers in the United States and has been so for nearly two decades.

## II.    Hershey and Its Knock-Off MALTESER Candy and All-Red Packaging

### A.    Hershey's Bad Faith Acquisition of the MALTESER Trademark

26.    Approximately 30 years after Mars launched MALTESERS candy throughout much of the world, a company called Leaf Brands, Inc. started selling milk chocolate-covered honeycomb balls in the United States under the mark MALTESER.  Leaf registered the mark MALTESER in the USPTO.

27.    In 1993, Mars sued Leaf in the United States District Court for the District of Delaware, alleging that Leaf had abandoned the MALTESER mark through non-use.  In 1994, Mars and Leaf settled the action and Mars dismissed its Complaint with prejudice.

28.    In or about December 1996, Leaf assigned its MALTESER mark to a Dutch limited liability company called Huhtamaki Finance B.V.  On information and belief, Huhtamaki did not use the mark MALTESER in commerce.

29.    In June 1998, Hershey's affiliate, Homestead, Inc., purported to obtain the MALTESER mark from Huhtamaki Finance B.V.  On information and belief, Hershey was selling a milk-chocolate covered, honeycomb ball candy known as WHOPPERS.  In 1998, Hershey acquired the MALTESER mark from Huhtamaki Finance B.V. in order to protect its WHOPPERS candy from competition in the United States by Mars' MALTESERS candy.

30.    On information and belief, between the date its affiliate Homestead, Inc. purported to acquire the MALTESER mark in June 1998 to date, Hershey has stopped using the mark MALTESER with the intent not to resume use and/or has engaged in token, bad faith use of the MALTESER mark only to reserve a right in the name in violation of the federal Lanham Act.

31.    Hershey does not advertise or promote MALTESER candy in its retail stores or marketing brochures or, on information and belief, in any other place.  Hershey does not

reference MALTESER candy in 10-K or 424 Prospectus Reports it has made in the SEC or in its annual reports.  Hershey has no social media accounts that are devoted or refer to MALTESER. Hershey does not advertise or sell MALTESER candy in foreign countries.  Hershey does not reference MALTESER on its web site at **thehersheycompany.com**. On information and belief, Hershey is not selling MALTESER candy in any grocery or retail outlet in the United States.  On information and belief, no news stories refer to Hershey's use of the mark MALTESER in the United States.  On information and belief, until 2014, Hershey did not sell MALTESER candy on its website at **hersheystore.com**.  To the extent that Hershey is selling or has sold MALTESER candy in commerce, such use is token, bad faith use made merely to reserve rights in the mark in violation of the federal Lanham Act.

32.     On information and belief, to the extent that Hershey has made bad faith, token use of MALTESER to reserve a right to the name, those sales have been of Hershey's WHOPPERS candy.  On information and belief, Hershey has placed pieces of WHOPPERS candy into MALTESER packaging and sold the candy as MALTESER candy, without disclosing to consumers that they were actually purchasing WHOPPERS.

**B.     Hershey's Fraudulent Trademark Registrations for MALTESER**

33.     Beginning in 2000, Defendant HC&CC submitted Statements of Continuing Use, Renewal Affidavits and Combined Affidavits of Use and Incontestability to the USPTO in order to cause the USPTO to allow HC&CC to maintain trademark registrations for MALTESER.  On information and belief, those documents contain knowingly false statements that the mark MALTESER was in use in commerce when in fact such use was non-existent or only token, bad faith use of the mark to reserve rights in it.

34.     For example, on or about December 1, 2000, HC&CC's then-President and

Counsel executed and filed with the USPTO a Combined Affidavit of Use and Incontestability under Sections 8 and 15 for the mark MALTESER (stylized) for candy, Registration No. 1,923,905. In that affidavit, HC&CC's then-President and Counsel swore under penalty of perjury that the registered mark had been used in commerce on or in connection with the goods for five consecutive years since the registration date (October 1995) and was still in use. On information and belief, this statement was knowingly false and made to cause the USPTO to allow HC&CC to maintain a registration which it knew it was not entitled to maintain. On information and belief, the registered mark had not been used continuously for five consecutive years since the registration date in October 1995 and was not being used at the time the Affidavit was submitted. On information and belief, HC&CC knew that any use of the registered mark at the time and any use made during the five years after the registration issued in October 1995 was only bad faith, token use made to reserve a right in the mark.

35.     On or about May 15, 2005, HC&CC's then-President and Counsel executed and filed in the USPTO a Combined Declaration of Use in Commerce & Application for Renewal of Registration of a Mark for MALTESER for candy, Registration No. 761,679. In that Declaration, HC&CC's then-President and Counsel swore under penalty of perjury that the registered mark was being used in commerce on or in connection with the goods. On information and belief, this statement was knowingly false and made to cause the USPTO to allow HC&CC to maintain a registration which it knew it was not entitled to maintain. On information and belief, HC&CC knew that any use of the registered mark was only bad faith, token use made to reserve a right in the mark in violation of the federal Lanham Act.

36.     On or about June 16, 2005, HC&CC's then-President and Counsel executed and filed a Combined Declaration of Use in Commerce & Application for Renewal of Registration of

a Mark for the mark MALTESER (stylized) for candy, Registration No. 1,923,905. In that Declaration, HC&CC's then-President and Counsel swore under penalty of perjury that the registered mark was being used in commerce on or in connection with the goods. On information and belief, that statement was knowingly false and made to cause the USPTO to allow HC&CC to maintain a registration which it knew it was not entitled to maintain. On information and belief, HC&CC knew that any use of the registered mark was bad faith, token use made only to reserve a right in the mark in violation of the federal Lanham Act.

37.      On or about March 8, 2011, HC&CC's then-Assistant General Counsel executed and filed in the USPTO a Trademark Statement of Use for MALTESER for ice cream, Serial No. 85,027,320. In connection with that Statement of Use, HC&CC's then-Assistant General Counsel swore under penalty of perjury that the mark MALTESER was being used for ice cream. On information and belief, that statement was knowingly false and made to cause the USPTO to issue a registration to which HC&CC knew it was not entitled. On information and belief, HC&CC knew that any use of MALTESER for ice cream was bad faith, token use made only to reserve a right in the mark in violation of the federal Lanham Act.

38.      On or about December 18, 2012, HC&CC's Assistant General Counsel executed and filed in the USPTO a Combined Declaration of Use and Application for Renewal of Registration of a Mark under Sections 8 & 9 for MALTESER for candy, Registration No. 761,679. In that Declaration, HC&CC's Assistant General Counsel swore under penalty of perjury that the registered mark was being used in commerce on or in connection with the goods. On information and belief, this statement was knowingly false and made in order to cause the USPTO to allow HC&CC to maintain a registration which it knew it was not entitled to maintain. On information and belief, HC&CC knew that any use of the registered mark was bad

faith, token use made only to reserve a right in the mark in violation of the federal Lanham Act.

### C.  Hershey's Knock Off, All-Red Packaging

39.  Sometime after 2010, Hershey began to employ a new tactic to attempt to protect its WHOPPERS candy from competition from Mars' MALTESERS candy.

40.  On information and belief, until 2010, to the extent that Hershey made any sales of MALTESER candy, such sales were token, bad faith sales made only to reserve a right in the name, and that candy was sold in the clear packaging depicted below:



41.  Because of the substantial recognition that Mars' MALTESERS candy and its distinctive, all-red packaging featuring various elements have in the United States, after 2010, Hershey duplicated Mars' all-red packaging along with various other elements of the packaging and began to pass off its goods as Mars' goods.  Hershey's knock-off, red packaging is depicted below:



42.     Hershey's knock-off, all-red packaging trades on the goodwill and reputation of Mars' MALTESERS mark and all-red packaging.  Hershey's knock-off packaging i) incorporates the identical or virtually identical shade of red as Mars' all-red packaging, ii) features the MALTESER brand slanting upward from left to right in the center of the package, extending almost the entire length of the package, iii) displays pieces of the candy cast in light with a shadow underneath, including a cross-section of a piece of the candy underneath the brand MALTESER, and iv) is substantially similar in dimension and weight to Mars' MALTESERS candy package.

43.     A side-by-side comparison of Mars' MALTESERS packaging to Hershey's MALTESER packaging demonstrates Hershey's MALTESER packaging is deceptively similar to Mars' MALTESERS packaging:



**Mars' MALTESERS Package**



**Hershey's MALTESER Package**

44.     Hershey's intentional copying of Mars' distinctive, all-red MALTESERS packaging featuring various elements was intended to cause, has caused and is likely to cause consumers in the United States to falsely believe that Hershey's MALTESER candy is manufactured by or sold under a license from Mars.

45.     For example, a purchaser of Hershey's MALTESER candy from **amazon.com** commented on January 6, 2014 that "These are ***NOT real Maltesers!***", demonstrating the

confusion that Hershey has intentionally caused as to the source of its knock-off product:

> Bought these for my son and after he got them he said they didn't taste anything like the Maltesers he has had in the past which are made in GB by Masterfoods a division of Mars inc.  The **typestyle on this box is similar to the Maltesers name** but I didn't notice it actually says Malteser.
>
> Apparently Malteser is made by Hershey.  **Shame on Hershey for using a similar name and making an inferior product!**  Yes its [sic] my fault for not noticing the difference but my son and his could certainly taste the difference.  **I'm thinking Hershey must make these under a licensing agreement with Mars.**  I think Masterfoods / Mars should tell Hershey not to make these if they can't make them like the real thing or change the name of this product because it is **pretty much deceptive**.

Ex. A (emphasis added).

46.   Another purchaser of Hershey's MALTESER candy from **amazon.com**

commented on March 19, 2014:

> When in England, I fell in love with Maltesers malted milk balls by the Mars company.  I decided to purchase a box.  when I did my search, i found this product – I didn't really pay attention – it looked right, had the right name, but boy! was I wrong!
>
> When the package arrived, I opened the box and immediately ripped open a bag and popped one in my mouth.  One taste and I could not believe what I purchased! These were not the melt in your mouth delicious, creamy chocolate coating i remembered.  The malt wasn't crispy – what the heck? Then I started to inspect the package – it's coloring and design were ok –but wait! **These are not Maltesers by Mars – they are MALTESER by Hershey (no "S")  they copied the style of lettering and the design of the Mars Maltesers – changing the lettering from white on Mars to yellow – but not so much of a change to really  notice – or if you did notice you think Mars might have changed the packaging a bit.**
>
> **These are a cheap knockoff by Hersheys that wasn't very cheap!** They have the same waxy chocolate coating as Whoppers and their malt is often clumped.
>
> I guess it is true – that we don't really pay attention to things – if I had really looked at the image –and really read the packaging on Amazon – I would have saved myself a lot [sic] of trouble.  **But who knew that Hersheys was low enough to pull this kind of behavior?!?! Why would they even bother trying to steal Maltesers customers? How dumb is this?**

If you are one of us crazy people who craves a delicious malted milk ball – this is not the product to buy!

Ex. B (emphasis added).

## COUNT I

### TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND MISREPRESENTATION OF SOURCE UNDER THE LANHAM ACT
### (15 U.S.C. § 1125)

47.     Mars re-alleges and incorporates the allegations in the paragraphs above as if fully set forth herein.

48.     Mars owns common law trademark rights for MALTESERS for candy in the United States, as well as common law trade dress rights for the distinctive, all-red packaging for its MALTESERS candy in the United States.

49.     Hershey's token, bad faith use of MALTESER and the knock-off, all-red packaging, constitutes trademark infringement, trade dress infringement, unfair competition, false designation of origin and misrepresentation of source because it is likely to cause confusion, mistake, and deception as to the affiliation, connection, association, origin, sponsorship or approval of Hershey's goods.  15 U.S.C. § 1125.

50.     Hershey's wrongful conduct has caused Mars to lose control over the reputation associated with its MALTESERS mark and trade dress in the United States.

51.     Hershey's wrongful conduct is causing irreparable harm and monetary damages to Mars.

52.     Unless Hershey is enjoined from its wrongful conduct, Mars will continue to suffer irreparable injury and harm, for which Mars has no adequate remedy at law.

53.     Hershey's wrongful conduct is willful and in bad faith, making this an exceptional case.

<u>COUNT II</u>

**TRADEMARK CANCELLATION UNDER THE LANHAM ACT BASED ON
MISREPRESENTATION OF SOURCE, ABANDONMENT AND FRAUD ON THE
UNITED STATES PATENT AND TRADEMARK OFFICE
(AS TO DEFENDANT HC&CC)
(15 U.S.C. § 1119)**

54.     Mars re-alleges and incorporates the allegations in the paragraphs above as if fully set forth herein.

55.     By duplicating Mars' distinctive, well-known, all-red packaging, Hershey has intentionally misrepresented the source of its MALTESER goods as being Mars and thus, HC&CC's Trademark Registration Nos. 761,769, 1,923,905 and 4,029,606 for MALTESER should be cancelled.  15 U.S.C. §§ 1064(3), 1119.

56.     On information and belief, Defendant HC&CC and its predecessors-in-interest, Huhtamaki Finance and Homestead, stopped use of the mark MALTESER on or in connection with candy with the intent not to resume use and/or made only bad faith, token use of the mark to reserve rights to the name and thus HC&CC's Registration Nos. 761,769 and 1,923,905 for MALTESER for candy should be cancelled.  15 U.S.C. §§ 1064(3), 1119.  On information and belief, HC&CC has stopped using the mark MALTESER for ice cream with the intent not to resume use and/or made only bad faith, token use of the mark to reserve rights to the name and thus HC&CC's Registration No. 4,029,606 for ice cream should be cancelled.  *Id.*

57.     On information and belief, Defendant HC&CC intentionally made false, material statements on December 1, 2000, May 15, 2005, June 16, 2005, March 8, 2011 and December 18, 2012 to the USPTO in order to induce it to issue and/or allow HC&CC to maintain Registration Nos. 761,769, 1,923,905, and 4,029,606 for MALTESER.  But for HC&CC's deliberately false and material statements, the USPTO would not have allowed HC&CC to

secure Registration No. 4,029,606, would not have allowed HC&CC to maintain Registration

Nos. 761,769 and 1,923,905, and would not have awarded incontestable status to Registration

No. 1,923,905 owned by HC&CC.

58.     Mars has been damaged and is likely to continue to be damaged by HC&CC's

Registration Nos. 761,769, 1,923,905, and 4,029,606 for MALTESER.

## COUNT III

### DAMAGES FOR SECURING AND MAINTAINING FEDERAL TRADEMARK
### REGISTRATIONS THROUGH FALSE AND FRAUDULENT STATEMENTS
### (AS TO DEFENDANT HC&CC)
### (15 U.S.C. § 1120)

59.     Mars re-alleges and incorporates the allegations in the paragraphs above as if fully

set forth herein.

60.     On information and belief, Defendant HC&CC made intentionally false and

fraudulent representations to the USPTO on or about March 8, 2011 and December 18, 2012 in

connection with HC&CC's MALTESER Registration Nos. 761,769, and 4,029,606.

61.     On information and belief, on or about the above-identified dates, HC&CC falsely

stated under penalty of perjury to the USPTO that the MALTESER marks in Registration Nos.

761,769 and 4,029,606 were in use in commerce for candy when HC&CC knew that the marks

were not in use and/or that any use was only bad faith, token use made to reserve a right in the

marks in violation of the federal Lanham Act.

62.     On information and belief, Defendant HC&CC's false and fraudulent statements

caused the USPTO to issue Registration No. 4,029,606 and caused the USPTO to allow HC&CC

to maintain Registration No. 761,769.

63.     Defendant HC&CC's false and fraudulent statements caused actual damages to

Mars in the form of lost revenues from sale of Mars' MALTESERS candy in the United States

that Mars would have made but for HC&CC's false and fraudulent statements to the USPTO in violation of the federal Lanham Act. 15 U.S.C. § 1120.

## COUNT IV

### TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN AND MISREPRESENTATION OF SOURCE UNDER VIRGINIA LAW

64. Mars re-alleges and incorporates the allegations in the paragraphs above as if fully set forth herein.

65. Mars owns common law trademark rights for MALTESERS for candy in Virginia, as well as common law trade dress rights for the distinctive, all-red packaging for its MALTESERS candy in Virginia.

66. Hershey's token, bad faith use of the mark MALTESER and the all-red packaging constitutes trademark infringement, trade dress infringement, unfair competition, false designation of origin and misrepresentation of source because it is likely to cause confusion, mistake, and deception as to the affiliation, connection, association, origin, sponsorship or approval of Hershey's goods in violation of Virginia law.

67. Hershey's wrongful conduct has caused Mars to lose control over the reputation and goodwill associated with its MALTESERS mark and trade dress.

68. Hershey's wrongful conduct is causing Mars irreparable harm and damages. Hershey has been unjustly enriched by its unlawful conduct.

69. Unless Hershey is enjoined from its wrongful conduct, Mars will continue to suffer irreparable injury and harm, for which Mars has no adequate remedy at law.

## COUNT V

### TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN AND MISREPRESENTATION OF SOURCE UNDER CALIFORNIA LAW

70.    Mars re-alleges and incorporates the allegations in the paragraphs above as if fully set forth herein.

71.    Mars owns common law trademark rights for MALTESERS for candy in California, as well as common law trade dress rights for the distinctive, all-red packaging for its MALTESERS candy in California.

72.    Hershey's token, bad faith use of the mark MALTESER and the all-red packaging constitutes trademark infringement, trade dress infringement, unfair competition, false designation of origin and misrepresentation of source because such conduct is likely to cause confusion, mistake, and deception as to the affiliation, connection, association, origin, sponsorship or approval of Hershey's MALTESER goods in violation of California law.

73.    Hershey's wrongful conduct has caused Mars to lose control over the reputation and goodwill associated with its MALTESERS mark and trade dress in California.

74.    Hershey's wrongful conduct is causing irreparable harm and monetary damages to Mars.

75.    Unless Hershey is enjoined from its wrongful conduct, Mars will continue to suffer irreparable injury and harm, for which Mars has no adequate remedy at law.

## COUNT VI

### TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN AND MISREPRESENTATION OF SOURCE UNDER NEW YORK LAW

76.    Mars re-alleges the allegations in the paragraphs above as if set forth herein.

77.     Mars owns common law trademark rights for MALTESERS for candy in the United States, as well as common law trade dress rights for the distinctive, all-red packaging for its MALTESERS candy in New York.

78.     Hershey's token, bad faith use of the mark MALTESER and the all-red packaging constitutes trademark infringement, trade dress infringement, unfair competition, false designation of origin and misrepresentation of source because it is likely to cause confusion, mistake, and deception as to the affiliation, connection, association, origin, sponsorship or approval of Hershey's MALTESER goods in violation of New York law.

79.     Hershey's wrongful conduct has caused Mars to lose control over the reputation and goodwill associated with its MALTESERS mark and trade dress in New York.

80.     Hershey's wrongful conduct is causing irreparable harm and monetary damages to Mars.

81.     Unless Hershey is enjoined from its wrongful conduct, Mars will continue to suffer irreparable injury and harm, for which Mars has no adequate remedy at law.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Mars demands a trial by jury on all claims and issue so triable.

## PRAYER FOR RELIEF

WHEREFORE, Mars prays for the following relief:

a.      That the Court enter judgment in favor of Mars and against Hershey on all claims for relief alleged herein;

b.      That the Court issue a permanent injunction:

      i.      enjoining Hershey, its employees, owners, agents, officers,

directors, attorneys, representatives, affiliates, subsidiaries, successors, assigns, and all those in active concert or participation with them or having knowledge of the claims alleged herein from using the mark MALTESER, alone or in combination with any other word(s), term(s), designation(s), mark(s), or design(s), as well as all similar marks and names;

ii. enjoining Hershey, its employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, assigns, and all those in active concert or participation with them or having knowledge of the claims alleged herein from using Mars' distinctive, all-red MALTESERS packaging, alone or in combination with any other word(s), term(s), designation(s), mark(s), or design(s), as well as any similar trade dresses

iii. requiring Hershey to deliver up for destruction all literature, signs, billboards, labels, prints, packages, wrappers, containers, advertising materials, stationery, and other items in their possession, custody or control that use MALTESER or other confusing similar marks pursuant to 15 U.S.C. § 1118; and

iv. requiring Hershey to file with the Court and serve on Mars within thirty (30) days after entry of an injunction, a report in writing under oath setting forth in detail the manner in which Hershey has complied with the Court's injunction.

c.     That the Court direct the USPTO to cancel the following Trademark Registrations

owned by HC&CC pursuant to 15 U.S.C. § 1119, or, in the alternative, order HC&CC to assign those registrations to Mars:

  i.  Reg. No. 761,679 for MALTESER for candy;

  ii.  Reg. No. 1,923,905 for MALTESER (and Design) for candy; and

  iii.  Reg. No. 4,029,606 for MALTESER for ice cream.

d.  That the Court grant monetary relief to Mars in the form of:

  i.  an accounting of all profits derived by Hershey from the acts complained of herein under 15 U.S.C. § 1117 and any other applicable statute or common law;

  ii.  Mars' damages allowable under 15 U.S.C. §§ 1117, 1120 and any other applicable statute or common law;

  iii.  treble damages and an enhanced award of Hershey's profits under 15 U.S.C. §§ 1117, 1120 and any other applicable statute or common law;

  iv.  Mars' costs and reasonable attorney's fees under 15 U.S.C. § 1117, and the laws of Virginia, California, and New York; and

  v.  Punitive damages as permitted under Virginia, California, or New York law.

e.  That the Court award Mars such other and further relief as it may deem just and proper.

Dated: April 15, 2014

By: /s/ Mary D. Hall

Mary D. Hallerman (Va. Bar No. 80430)
Katie Bukrinsky (Va. Bar No. 76549)
John J. Dabney (to file motion for *pro hac vice* admission)
Robert W. Zelnick (to file motion for *pro hac vice* admission)
Joanne Ludovici (to file motion for *pro hac vice* admission)
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001-1531
Telephone:   (202) 756 8000
Facsimile:   (202) 756 8087

Attorneys for Plaintiff
Mars, Incorporated